IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

J.T. RIORDAN,

        Plaintiff,

v.                                                    CV 09-1033 BB/WPL

COUNTY OF LINCOLN, CORNELL
COMPANIES INC., and EMERALD
CORRECTIONAL MANAGEMENT INC.,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

This matter is before me on a complaint filed by J. Tyrone Riordan and *Martinez* reports submitted by Emerald Correctional Managaement, Inc. ("Emerald"), Cornell Companies, Inc. ("Cornell"), and the County of Lincoln (collectively "Defendants"). The parties were notified that the *Martinez* report might be used in deciding whether to grant summary judgment *sua sponte* and that they should submit whatever materials they considered relevant to Riordan's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (noting that district courts have the power to enter summary judgment *sua sponte*, as long as the opposing party was on notice that she had to come forward with all her evidence). Having considered the parties' materials, I recommend that Riordan's complaint be dismissed without prejudice due to his failure to exhaust administrative remedies.

**BACKGROUND**

J. Tyrone Riordan, a prisoner who is currently incarcerated in the Lincoln County Detention Center ("LCDC"), filed a complaint under 42 U.S.C. § 1983. (Doc. 6.) Although Riordan alleged several constitutional violations, an order of this court dismissed all of Riordan's claims except for

his claim of unconstitutional conditions of confinement. (Doc 14 at 4.) Riordan raised this claim as part of count two of his complaint, alleging a violation of the Eighth Amendment. (Doc. 6 at 13.) I then ordered Defendants to submit *Martinez* reports so that I could determine whether there is a factual and legal basis for Riordan's claims. *See Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). The County of Lincoln and Cornell submitted a joint *Martinez* report, (Doc. 24), and Emerald submitted a separate *Martinez* report (Doc. 29). Riordan was ordered to file a response or objections to the reports by December 8, 2010, but he did not respond.

Riordan has brought numerous allegations as part of his claim of unconstitutional conditions of confinement. In sum, Riordan alleges that: he was placed in administrative segregation, a type of solitary confinement, for two years (Doc. 6 at 3, 15); LCDC staff employed by Emerald harassed Riordan and improperly restrained him (*id.* at 9); LCDC staff failed to protect Riordan from attacks by other inmates, including thrown cups of urine mixed with fecal matter (*id.* at 3, 13-14); LCDC staff failed to document the attacks or respond to Riordan's grievances (*id.* at 3, 12, 17); LCDC staff failed to keep Riordan's cell clean or provide him with cleaning supplies (*id.* at 2); the temperature in Riordan's cell dropped below 40 degrees Fahrenheit at night, causing sickness (*id.* at 4, 11, 15); LCDC medical staff failed to provide proper treatment, tried to force Riordan to take unnecessary medication, and released Riordan's medical records without his authorization (*id.* at 3-5, 11, 14-15); LCDC staff failed to prevent a suicide attempt by Riordan and allowed him to lie in his own feces and urine for a week afterward (*id.* at 4, 14); a chaplain at LCDC disclosed private communications with Riordan to the courts (*id.* at 8-9); and LCDC medical staff refused to reschedule a dental appointment for two years, harming Riordan's teeth.[1]

---

[1] Emerald and Cornell both note that Riordan's failure to provide dates in his complaint makes it impossible to discern which entity operated LCDC when the acts and omissions alleged by Riordan occurred.

In their *Martinez* reports, defendants argue that count three of Riordan's complaint, asserting a violation of the Fourteenth Amendment right to equal protection, (*id.* at 15), is not a viable basis for his claim of unconstitutional conditions of confinement.[2] Defendants also argue that Riordan's Eighth Amendment claim fails on the merits. However, Defendants' principal argument is that Riordan's complaint should be dismissed because he did not exhaust his administrative remedies. Cornell has submitted an affidavit which states that Cornell utilized inmate grievance procedures while operating LCDC and that Riordan did not file a grievance for any matter. (Doc. 24, Ex. 1 at ¶¶ 9, 11.) Emerald has submitted its detainee grievance procedures (Doc. 29, Ex. C at 7-11) and affidavits which state that of all of Riordan's allegations, the only one for which he filed a grievance was his placement in administrative segregation. (*Id.* Ex. A at ¶ 7; Ex. B at ¶ 7.) Emerald's affidavits state that although Riordan filed two grievances regarding his placement in administrative segregation, he failed to appeal the grievances as permitted by Emerald's procedures and thus failed to exhaust his administrative remedies. (*Id.* Ex. A at ¶ 8; Ex. B at ¶ 8.)

---

On May 10, 2007, when Riordan's incarceration's began, Cornell operated LCDC under a contract with the County of Lincoln. (Doc. 24, Ex. 1 at ¶ 5.) On May 4, 2008, Emerald assumed operation of LCDC. (*Id.*) Because I find that Riordan has failed to exhaust his administrative remedies for all of his allegations, however, I need not resolve the issue of which acts can be attributed to which entity.

[2] Although Equal Protection is not a proper basis for Riordan's claim of unconstitutional conditions of confinement, Defendants are incorrect in their conclusion that "[c]onstitutional claims brought by inmates arising from conditions of their confinement can only be brought under the Eighth Amendment." (Doc. 24 at 12.) The identical string citations that Defendants provide do not support this statement. Instead, the Tenth Circuit has explained that for pretrial detainees such as Riordan, the Due Process Clauses govern claims of unconstitutional conditions of confinement. *See Bainum v. Sedgwick Cnty. Comm'rs,* 27 F. App'x 965, 968 (10th Cir. 2001) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 & n.16 (1979)) ("While the conditions under which a prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments.") (unpublished); *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998) ("Although the Due Process Clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims.").

3

## SUMMARY JUDGMENT STANDARDS

Summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The record and all of its reasonable inferences must be viewed in the light most favorable to the nonmovant. *See Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Affidavits may be used to support or oppose a motion for summary judgment, but they "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). *Martinez* reports are treated as affidavits, *Hall,* 935 F.2d at 1111, which means that summary judgment may not be predicated on statements in a *Martinez* report that are not sworn or not based on personal knowledge. *See Hayes v. Marriott*, 70 F.3d 1144, 1147-48 (10th Cir. 1995). A complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. *Hall*, 935 F.2d at 1111.

A court cannot resolve material disputed factual issues by accepting a *Martinez* report's factual findings when they are in conflict with pleadings or affidavits. *Id.* at 1109 (citations omitted). A bona fide factual dispute exists even when a pro se "plaintiff's factual allegations that are in conflict with the *Martinez* report are less specific or well-documented than those contained in the report." *Id.* However, conclusory and self-serving allegations without facts that would be admissible in evidence do not create a material factual dispute that would preclude summary judgment. *Id.* at 1111; *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1321 (10th Cir. 2010) (quoting *L & M Enter., Inc. v. BEI Sensors Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000)) ("Unsupported conclusory allegations . . . do not create a genuine issue of fact."); *Fitzgerald Corr. Corp. of Am.*, 403 F.3d 1134, 1143 (10th Cir. 2005) (citations and internal quotation marks omitted)

("We have long held that conclusory allegations without specific supporting facts have no probative value.") .

## EXHAUSTION

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision requires a prisoner to exhaust available administrative remedies before filing suit even if those remedies cannot provide the type of relief the prisoner seeks. *See Booth v. Churner*, 532 U.S. 731, 734 (2001); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). It also requires "proper" exhaustion, which means that prisoners must "complete the administrative review process in accordance with applicable procedural rules." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). These rules are defined by the prison grievance procedures, not the PLRA. *Id.*

Furthermore, the Tenth Circuit has held that a plaintiff who begins the grievance process but does not complete it has not exhausted his administrative remedies and is barred from bringing a § 1983 action. *Jernigan*, 304 F.3d at 1032. The doctrine of substantial compliance does not apply to the exhaustion requirement, and giving notice to prison officials by means other than the established grievance process is not sufficient to exhaust available administrative remedies. *See id.* However, failure to exhaust under the PLRA is an affirmative defense for which the defendant carries the burden of proof. *Jones*, 549 U.S. at 216-17; *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendants must prove both that (1) administrative remedies were available to the

plaintiff and that (2) the plaintiff failed to exhaust the remedies. *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 726 (10th Cir. 2008) (unpublished).

Here, Defendants' *Martinez* reports and accompanying affidavits state that Riordan did not complete the available grievance process for any of the allegations that comprise his claim of unconstitutional conditions of confinement. Roger Jeffers, who served as warden of LCDC under Cornell from when Riordan was first incarcerated until Emerald assumed operation of LCDC, has sworn that Riordan did not file a grievance form regarding any matter while Cornell operated LCDC. (Doc. 24, Ex. 1 at ¶ 11.) Jeffers states that Riordan did file numerous "Inmate Request" forms, which can be found in the inmate file provided by Cornell, but these forms are distinct from Cornell's grievance procedures and are meant to convey requests instead of formal grievances that may be appealed. (*See, e.g.*, Doc. 25, Ex. 1-B2 at 12 ("May I please use your toe nail clippers."); Doc. 25, Ex. 1-B3 at 15 ("May I please get a dose of forgiveness Almost everybody is grumpy when they wake up in here. Have a good day").) One of these forms requests an additional blanket because of cold conditions in Riordan's cell, (Doc. 24, Ex. 1-D at 2), but there is no accompanying grievance form regarding this issue. The inmate file provided by Cornell does not contain any grievance forms filed by Riordan.

The affidavits and records provided by Emerald, meanwhile, indicate that although Riordan did file more than a dozen grievances after Emerald assumed operation of LCDC, he did not appeal his grievance responses as required by Emerald's grievance procedure. The inmate file provided by Emerald contains grievances that, construing Riordan's complaint liberally, *see Hall*, 935 F.2d at 1111, pertain to only two[3] of Riordan's cognizable[4] claims: (1) his complaint of being held in

---

[3] I disagree with Emerald's assertion that Riordan's grievance claiming that he was not seen by a dentist (Doc. 29, Ex. D at 2) "does not appear to be the issue raised in the Amended Complaint on page 14"

6

administrative segregation (Doc. 29, Ex. D at 10, 12); and (2) his allegation that LCDC medical staff refused to reschedule a dental appointment for two years (*id.* at 2).

Emerald's detainee grievance procedures provide for two levels of appeal. When a grievance is filed, it is first reviewed by the appropriate department head. (Doc. 29, Ex. C at 10.) If it is not resolved to the detainee's satisfaction, a Grievance Board is convened to resolve the issue, before which the detainee may present his case. (*Id.*) If the detainee is dissatisfied with the Grievance Board's decision, he may appeal the decision to the warden within five working days of receiving notice of the decision. (*Id.*) The warden must reply in writing and his decision is final. (*Id.*)

In response to his grievances, Riordan received non-favorable decisions that he needed to appeal in order to exhaust his administrative remedies. *C.f. Ross v. Cnty. of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004) (citing cases for the proposition that prisoners have exhausted available administrative remedies when they have received favorable responses to their grievances or won all available relief under an institution's administrative procedures), *abrogated on other grounds by*

---

(*Id.* at 5 n.2.), where Riordan alleges that "L.C.D.C. medical staff failed to reschedule me a dentist's appointment for two years." (Doc. 6 at 14.) The grievance clearly pertains to Riordan's alleged difficulty in receiving dental treatment. I also find that Riordan filed grievances pertaining to two additional allegations, as discussed in footnote 4, *infra*.

[4] There are two additional grievances in the Emerald inmate file that pertain to allegations in Riordan's complaint, but neither allegation forms a cognizable claim. One grievance (Doc. 29, Ex. D at 5) describes behavior by an Emerald employee that appears to relate to Riordan's generalized complaint of Emerald employees harassing him "by unnecessarily restraining [him] for long periods of time while in [his] cell." (Doc. 6 at 9.) However, without any facts in support, this conclusory sentence in Riordan's complaint is insufficient to create a material factual dispute or a cognizable claim. *Abdulhaseeb*, 600 F.3d at 1321; *Hall*, 935 F.2d at 1111. A second grievance (Doc. 29, Ex. D at 4) relates to Riordan's generalized complaint of LCDC staff opening his legal mail outside his presence (Doc. 6 at 4, 11), but this is a claim that has been considered only as a potential violation of the right to free speech, access to the courts, or of the attorney-client privilege. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974); *Al-Amin v. Smith*, 511 F.3d 1317, 1325, 1333 (11th Cir. 2008); *Sallier v. Brooks*, 343 F.3d 868, 873-874 (6th Cir. 2003). It is not cognizable under Riordan's claim of unconstitutional conditions of confinement under the Eighth and Fourteenth Amendments.

*Jones*, 549 U.S. at 202.  In response to his grievance regarding dental care, Riordan was told that he did not have an appointment on the specific occasion that he claimed he was denied treatment. (Doc. 29, Ex. D at 2.)  In response to two grievances that Riordan filed regarding his placement in administrative segregation, Riordan was told that the issue was "non-grievable" because his prior behavior required that he remain in solitary confinement. (*Id.* at 10, 12.)

Although the "non-grievable" language could be seen as foreclosing an appeal, the Tenth Circuit has held that inmates failed to exhaust administrative remedies when they did not file grievances even though the inmates knew that the subjects of their grievances were listed as "non-grievable" in prison procedures.  *Beaudry v. Corr. Corp. Of Am.*, 331 F.3d 1164, 1166-67 (10th Cir. 2003).  The court reasoned that one of the purposes of the exhaustion requirement is to force an inmate to undergo the administrative process so that prison officials have the opportunity to take some corrective action that would preclude litigation.  *Id.* at 1167 (citing *Booth*, 532 U.S. at 737). It also noted that despite the "non-grievable" designation, prison officials still had the power to grant the injunctive relief requested by the prisoners.  *Id.*

Here, although Riordan was told that his grievances were non-grievable, the accompanying reason was that his behavior warranted his continued solitary confinement.  This was a decision and justification that Riordan should have appealed to the Grievance Board and wardenRiordan requested in the grievances to be released from administrative segregation or transferred to a different facility altogether, (Doc. 29, Ex. D at 10, 12), which is relief that the warden could have granted if given the opportunity.  By failing to bring these issues before the warden, Riordan did not comply with Emerald's grievance procedures.

The current warden of LCDC under Emerald, Arthur Anderson, and the LCDC booking/transport supervisor, Jeannette Walker, have each sworn that Riordan's inmate file does

not contain any appeals of his two grievances regarding administrative segregation. (*Id.* Ex. A at ¶ 8; Ex. B at ¶ 8.) These forms each contain a line where Riordan could indicate that he wanted the matter referred to the Inmate Grievance Committee, which is presumably the Grievance Board mentioned in Emerald's procedures. This line is blank on both grievance forms pertaining to administrative segregation. (*Id.* Ex. D at 10, 12.) It is also blank on Riordan's grievance form regarding his dental treatment, (*id.* at 2), and there is no evidence in the inmate file that any of the grievances were appealed up to the warden.

This collective evidence, if not controverted, would establish that Riordan did not complete the grievance process under Cornell's or Emerald's procedures and thus failed to exhaust his administrative remedies. *Jernigan*, 304 F.3d at 1032. As mentioned, Riordan did not file a response to the Defendants' *Martinez* reports. Thus, Riordan has not argued or submitted any materials demonstrating that he did complete the appeal process for his grievances regarding administrative segregation or his lack of dental treatment. Riordan has also not submitted materials indicating that he filed grievances regarding the many other allegations in his complaint for which Defendants contend he did not file a grievance. Riordan's only reference to this issue is in his complaint, where he asserts that he "filed numerous grievances" (Doc. 6 at 17) and that "L.C.D.C. staff . . . refused to respond to my grievances" (*Id.* at 3, 12). Without any specificity or accompanying facts, however, these are merely conclusory allegations that do not create a material factual dispute. *Abdulhaseeb*, 600 F.3d at 1321; *Hall*, 935 F.2d at 1111.

I therefore find that Defendants have carried their burden and that there is no genuine dispute regarding Riordan's exhaustion of administrative remedies. Riordan has not exhausted his administrative remedies in regard to any of the allegations in his complaint. The only cognizable claims for which he filed a grievance are his complaints regarding his dental treatment and his

9

placement in administrative segregation, but Riordan did not appeal these grievances as required by Emerald's procedures. Having failed to exhaust his administrative remedies, Riordan cannot maintain his suit under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a).

### CONCLUSION

For the reasons stated above, I recommend that Riordan's complaint (Doc. 6) be dismissed without prejudice due to his failure to exhaust administrative remedies.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

_____
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

10